IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **EMILIO M. PUENTE,**<br><br>Plaintiff,<br><br>vs.<br><br>**IOWA CITY POLICE DEPT. and CITY OF IOWA CITY, IOWA**<br><br>Defendants. | CASE NO._____<br><br><br>**COMPLAINT AND JURY TRIAL DEMAND** |

# COMPLAINT

COMES NOW, Plaintiff Emilio M. Puente, and files this Complaint for damages under Title VII of the Civil Rights Act of 1964, as amended, and the American with Disabilities Act of 1990, as amended. In support thereof, Plaintiff states as follows:

## PARTIES

1. Plaintiff Emilio M. Puente is a resident of Iowa.

2. Defendant Iowa City Police Department is in Iowa, and Defendant City of Iowa City, Iowa is a municipality, as defined by Iowa Section 670.1(2).

## JURISDICTION N AND VENUE

3. This case presents a federal question under Title VII of the Civil Rights Act of 1964, as amended, and the American with Disabilities Act of 1990, as amended. This Court has subject matter jurisdiction under 28 U.S.C. 1331.

4. Upon service of process, this Court acquires personal jurisdiction of the Defendants under Fed. R. Civ. P. 4(k)(1)(a).

5. Venue is proper in the Southern District of Iowa under 28 U.S.C. § 1391(b) because all acts occurred within this District and Division.

## FACTUAL ALLEGATIONS

6. Plaintiff was employed by Respondent from April, 2019, until February, 2022.

7. Based on allegations below, Plaintiff asserts that his separation from employment in February, 2022, constituted a constructive discharge from employment.

8. Plaintiff made a timely complaint of civil rights violations to the Iowa Civil Rights Commission later in 2022.

9. The ICRC issued a right to sue letter on or about April 25, 2024.

10. This action is filed timely.

11. Jurisdiction and venue are proper in this Court as the Defendants are located there and the parties' course of dealing occurred there, and the case asserts Plaintiff's rights under federal law.

12. Plaintiff Emilio Puente was hired as an Iowa City police officer in April 2019.

13. Plaintiff had a number of commendations for bravery and high quality performance during his time as an officer.

14. During his time at the Iowa City Police Department (ICPD), Plaintiff experienced discrimination on a number of different occasions based on his race, skin color, and disability.

2

15. The first occasion occurred in November 2019, where a fellow officer sent an email from Plaintiff's work email address to all police officers in the ICPD. The contents of the email mocked Plaintiff's Latino ethnicity. Plaintiff showed the email to his supervisor, but no action was taken and there was no investigation into the matter.

16. When a similar incident occurred with a Caucasian officer, where an email was sent from his account by someone else making fun of his status on military leave, the Chief of the ICPD sent an email that this type of behavior will not be tolerated. Additionally, an investigation into the matter was initiated under the department's Discriminatory Harassment policies.

17. There are blatant differences in treatment based upon the ethnicity of the targeted officer in these separate incidents; the Plaintiff, a Latino man, was overlooked and brushed past, while a Caucasian officer got full support and assistance from ICPD leadership.

18. The second occasion occurred in July 2020, where Plaintiff and another officer were pursuing a fleeing suspect through a grassy area. Plaintiff got into his car after his fellow officer, so the other officer initiated the chase through the grass while Plaintiff followed behind.

19. After a third-party complaint was filed about the officers driving through the grass, Plaintiff was given discipline for his actions. However, the officer who initiated the chase through the grass was not disciplined, or even talked to, about the same incident.

20. Plaintiff, as a Latino man, received full blame, despite the fact that his fellow (Caucasian) officer led the pursuit through the grass. Again, Plaintiff was treated differently from his Caucasian counterparts in a disadvantageous way.

21. The third occasion of racial discrimination involved the incident that eventually led to Plaintiff's forced resignation. In November 2021, Plaintiff participated in the lawful arrest of a suspect who was being assaultive and resistant. While Plaintiff and another officer tried to restrain the man, he continued to conceal his arm close to his body, leading Plaintiff to suspect that the man could have a weapon.

22. In order to gain control over the situation, Plaintiff delivered two controlled strikes to the suspect, which caused the suspect to surrender, and officers put him in handcuffs.

23. Following this arrest, Plaintiff and his fellow arresting officer talked with an ICPD Lieutenant, explaining their use of force. The Lieutenant did not have any questions or concerns with the amount of force used.

24. The suspect's mother brought in a third-party video taken of the arrest a short time later. She did not file a formal complaint, but wanted the ICPD to be aware of the video circulating in local social media.

25. Nine days after that arrest, Plaintiff was arresting a subject who then violently kicked Plaintiff in the right knee. After taking the suspect to the Johnson County Jail, Plaintiff went to the hospital to receive treatment for his leg.

26. Plaintiff suffered a crushed saphenous nerve and Complex Regional Pain Syndrome, a chronic nerve damage condition, as a result of the injury he received while performing his duties as a law enforcement officer.

27. This condition is classified as a disability both by Plaintiff's physician and state law (https://secure.ssa.gov/poms.nsf/lnx/0424580025).

28. Soon after his injury, Plaintiff was summoned to the PD, and told it was for the purpose of filling out paperwork relating to his injury.

29. Once he got there, he was given notice of an internal affairs investigation into the arrest where he used force.

30. Plaintiff's use of force was deemed reasonable by a Use of Force Instructor and a De-escalation Instructor.

31. Iowa Code 804.8 states: "A peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest or to defend any person from bodily harm while making the arrest."

32. Plaintiff, as a peace officer making a lawful arrest, was therefore justified in using reasonable and necessary force to complete the arrest and keep himself and other bystanders safe.

33. Plaintiff was instructed to attend a meeting on 2/3/22 that would conclude his internal affairs investigation. At this meeting, Plaintiff was told that the Chief of Police would terminate his employment in less than two hours, and that he

would never again work in law enforcement, unless he resigned his employment.

34. Plaintiff, unable to consult family or counsel in that short time, followed the advice of his union representatives and submitted a letter of resignation.

35. His decision was made while under the influence of pain medications for his leg, emotional distress, uncertainty as to how his decision would affect his disability pay from Iowa City, and with the instruction from his union representative that it would be in Plaintiff's best interest to resign.

36. These factors show that his decision to resign was not based on his own free will or will full knowledge of the implications of this decision.

37. Because of his forced resignation, Plaintiff's disability pay was discontinued immediately and he was left without income.

38. As a result, the Plaintiff was thrown into deep financial hardship, and very quickly had to sell his house and his car, due to inability to make payments on those valued items.

39. After a May, 2022 hearing concerning the Plaintiff before the Iowa City civil service commission, department management made a statement to the press that the Plaintiff had committed misconduct in violating use of force policy in what is seen on bystander video and he faced termination due to that, which publicly impugned Plaintiff's character.

40. In June of 2022, a videos of a different ICPD officer surfaced on social media. In one video, the officer grabs a female suspect whose hands are cuffed behind her

6

back and forcefully shoves her into the backseat of a police vehicle. Once she is in the backseat, still with her hands cuffed behind her back, the officer strikes the female more than seven times with his closed fist. The officer involved in this incident is Caucasian.

41. The officer in this other video was never disciplined for what is seen, nor did the department even open any internal inquiry about the incident.  In fact, the department publicly defended that officer against criticism.

42. Another video that has been circulated on social media concerned that same other officer.  It showed him pursuing a man who was walking into a retail store, demanding that he stop.

43. When the man did not stop to the satisfaction of the other officer, he was beaten and apprehended by the other officer.  The man in that video posed no threat to the officer of any kind.

44. The other officer, a Caucasian, was not disciplined, nor was any inquiry opened regarding that second incident.

45. This is another occasion of Plaintiff receiving worse treatment than his Caucasian counterparts. Plaintiff struck a man resisting arrest twice to get him into handcuffs. The other officer struck a woman in handcuffs in the back of a police vehicle seven times. He also struck a non-threatening suspect who was merely walking away from him.  The only video released of Plaintiff's use of force by the ICPD was the third-party footage that painted Plaintiff in a negative light; the ICPD released body camera footage and back seat camera footage along with the

third-party footage of the other officer's use of force to show different angles. While the Plaintiff was forced to resign and lost his disability income, the other officer was publicly defended by the ICPD.

46. Since his forced resignation, Plaintiff has been dealing with public and professional backlash. He lost his job and has had trouble finding another one both because of his disability and because of the circumstances surrounding his departure from his last job. The Department's public criticism of him caused anti-police activists to follow him to new jobs and pressure the employer to fire him.

47. Plaintiff has suffered economic devastation, barriers to employment, and severe emotional distress due to the Defendants' discrimination against him.

### COUNT I    RACIAL/ETHNIC DISCRIMINATION

48. Plaintiff asserts that the above allegations, proven at trial, constitute discrimination against the Plaintiff on the basis of his race or ethnicity in the form of adverse treatment compared to similarly situated officers who do not share his race or ethnicity.

49. Such discrimination is not allowed under 42 U.S.C. Sec. 2000e, et. seq.

50. Such discrimination is not allowed under Chapter 216 of the Iowa Code.

51. Violations of those laws entitle the Plaintiff to judgment against the Defendants for money damages to the extent of his damages shown at a trial on the merits.

WHEREFORE the Plaintiff prays for judgment of damages against the Defendants and for such other and further relief as the Court deems just and equitable in the premises.

## COUNT II:  DISABILITY DISCRIMINATION

52. Plaintiff asserts that the above allegations, proven at trial, constitute discrimination against the Plaintiff on the basis of his disability in the form of adverse treatment compared to similarly situated officers who were not suffering from physical disability.

53. Such discrimination is not allowed under 42 U.S.C. 12101, et. seq.

54. Such discrimination is not allowed under Chapter 216 of the Iowa Code.

55. Violations of those laws entitle the Plaintiff to judgment against the Defendants for money damages to the extent of his damages shown at a trial on the merits.

WHEREFORE the Plaintiff prays for judgment of damages against the Defendants and for such other and further relief as the Court deems just and equitable in the premises.

                                                ___*/s/ Peter M. Sand*_____
Peter M. Sand  IA BAR AT0006939
1441 29th St. #310
West Des Moines, IA 50266
(515)207-8550
Cell- 515-556-3245
Pete.sand6@gmail.com
ATTORNEY FOR PLAINTIFF